UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

JUSTIN KRIEG and ABIGAIL KRIEG, Individually as Wrongful Death Beneficiaries of R.K., Deceased, and As Representatives of the Estate of R.K., Deceased,

*Plaintiffs*,

v.

GRACO CHILDREN'S PRODUCTS, INC.,

*Defendant*.

No. 6:24-CV-171-CRW

## MEMORANDUM OPINION

On October 16, 2026, the Court issued an order denying Graco's motion for summary judgment (Dkt. No. 64). Order Den. Summ. J., Dkt. No. 113. The Court issued another order on the parties' motions to exclude certain expert testimony (Dkt. No. 62, 63, 65, 66, 67). Order on Parties' Mots. Excl., Dkt. No. 114. Below is the Court's opinion reflecting its reasonings.

## I. BACKGROUND

### A. Factual Background

This is a products-liability case. On July 4, 2022, Justin and Abigail Krieg placed their infant son, R.K., in a Graco-manufactured swing. Pls.' 2d Am. Compl. ¶ 3.7, Dkt. No. 111. Later that night, they found nine-month-old R.K. "partially hanging from the swing and unresponsive." *Id.* R.K. died because of his injuries. *Id.*

The Kriegs used a DuetConnect, a motorized swing equipped with a five-point harness. Def.'s Mot. Summ. J. at 2, Dkt. No. 64. The manual and swing itself included

warnings stating not to leave children unattended in the swing, that that the swing was not "safe for sleep," and to "ALWAYS use the restraints and adjust to fit accordingly." *Id.* at 3 (emphasis in original); *see also* Pls.' Resp. to Def.'s Mot. Summ. J. at 7, Dkt. No. 80.

The Kriegs testify that Justin Krieg assembled the swing, following the manual's instructions. Justin Krieg Dep. 74:19–75:2, Dkt. No. 64-6; Abigail Krieg Dep. 104:21–105:9, Dkt. No. 64-7. The Kriegs do not remember if they reviewed other parts of the manual besides the assembly instructions. Pls.' Resp. at 7, Dkt. No. 80, 9. After the initial assembly, Justin Krieg had periodically disassembled the swing to clean it. Justin Krieg Dep. 99:1–24. The Kriegs routinely used the swing for R.K.'s daily naps. Abigail Krieg Dep. 71:13–18. They secured R.K. with the swing's lap belt but not its shoulder straps. *Id.* 137:23–138:5; Justin Krieg Dep. 85:3–7.

**B. Procedural Background**

The Kriegs brought design-defect, marketing-defect, and negligence claims against Graco. Pls.' 2d Am. Compl., Dkt. No. 111. The Kriegs claim that the swing's design allows infants to move into "dangerous positions" that can ultimately result in asphyxia. *Id.* ¶ 4.4. They allege that the "restraint system does not effectively secure" infants. *Id.* The Kriegs propose alternative designs, which include changing the swing's seatback angle and frame structure. *Id.* ¶ 4.6. They also allege that Graco failed to warn consumers of the swing's dangers. *Id.* ¶¶ 4.10–16. The Kriegs state that the swings design and warning defects caused R.K.'s death. *Id.* ¶¶ 4.9, 4.15.

Graco argues that the Kriegs' recovery is limited by their degree of responsibility. Def.'s Answer & Countercl. to Pls.' 2d Am. Compl. ¶ 2, Dkt. No. 115. Graco

alleges that the Kriegs failed to (i) use the restraint system as required; (ii) supervise R.K. when in the swing; and (iii) properly connect some of the swing's components. *Id.* ¶ 5. It also alleges that the Kriegs allowed R.K. to sleep in the swing "contrary to the [swing's] instructions." *Id.*

Both parties designated experts in support of their claims. Relevant here, the Kriegs designated (1) Dr. Li, a human-factors and warnings expert, to testify about the swing's instructions; (2) Dr. Mannen, a biomechanical expert, to testify about the swing's alleged seatback-design defect; and (3) Dr. Singhose, a mechanical-engineering expert, to testify about the product's alleged design defects. Graco designated (1) Dr. Goldsmith, a medical expert; and (2) Dr. Prange, a biomechanical-engineer expert, to provide alternative causation testimony. Dr. Prange would also testify about the swing's design.

The Kriegs moved to exclude testimony by Dr. Goldsmith (Dkt. No. 62) and Dr. Prange (Dkt. No. 63). Graco moved to exclude testimony by Dr. Li (Dkt. No. 65), Dr. Mannen (Dkt. No. 66), and Dr. Singhose (Dkt. No. 67). Graco also moved for summary judgment, arguing that the Kriegs had no evidence to support certain essential elements of their claims (Dkt. No. 64). The Court granted Graco's motion to exclude testimony by Dr. Li in part, holding that Dr. Li "may not speculate as to the Kriegs' subjective thoughts or knowledge." Order on Parties' Mots. Excl., Dkt. No. 114. Otherwise, all the parties' motions were denied. *Id.*; Order Den. Def.'s Mot. Summ. J., Dkt. No. 113.

## II. Legal Standards

### A. Motion for Summary Judgment

The Court must grant summary judgment when the pleadings and summary-judgment evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A defendant may prevail on summary judgment by either (1) negating an essential element of a plaintiff's claim or (2) showing that no evidence supports an essential element of the plaintiff's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). To defeat the defendant's motion, the plaintiff must come forward with sufficient competent summary-judgment evidence to show "that there is a genuine issue for trial." *Id.* at 324. If the plaintiff "fail[s] to make a sufficient showing on an essential element of her case," the defendant is entitled to judgment as a matter of law. *Id.* at 323.

A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant based on the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, there must be sufficient evidence requiring a factfinder "to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). Which facts are material depends on the substantive law. *Id.* at 248. "In a diversity case such as this one, [courts] apply state substantive law, i.e., that of Texas." *Cimarex Energy Co. v. CP Well Testing, L.L.C.*, 26 F.4th 683, 687 (5th Cir. 2022); *see also Eerie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). The Texas Supreme Court defines state law and is binding for matters of substantive law. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940). When there is no opinion by the Texas Supreme Court on point, the court

presumes that Texas appellate-court opinions accurately represent Texas law. *Exxon Co., U.S.A., a Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas*, 889 F.2d 674, 675 (5th Cir. 1989).

In reviewing the summary-judgment evidence, the court must draw all reasonable inferences in the light most favorable to the plaintiff and resolve all reasonable doubts in the plaintiff's favor. *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). "It is not the role of the court to make credibility determinations, or to weigh evidence when ruling on a motion for summary judgment." *McManaway v. KBR, Inc.*, 852 F.3d 444, 449 (5th Cir. 2017) (citing *Anderson*, 477 U.S. at 255). Rather, the court determines whether there is a need for trial because the factfinder could resolve material fact issues in either party's favor. *Anderson*, 477 U.S. at 250. The court should deny the motion "[i]f reasonable minds could differ as to the import of the evidence." *Id.* at 250–51.

**B. Admissibility of Expert Testimony**

Trial courts must determine whether expert testimony is relevant and reliable. *Daubert v. Merrel Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "The federal rules and practice favor the admission of evidence rather than its exclusion if it has any probative value at all." *Young v. Ill. Cent. Gulf R. Co.*, 618 F.2d 332, 337 (5th Cir. 1980) (internal quotations omitted).

The proponent of expert testimony must show by a preponderance of the evidence that the testimony meets the requirements of Rule 702. Fed. R. Evid. 702, 104(a); *Moore v. Ashland*, 151 F.3d 269, 276 (5th Cir. 1998). Expert testimony is admissible if the "proponent demonstrates to the court that it is more likely than not

that:" (a) the expert's specialized knowledge will help the jury understand the evidence or "determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert*, the Supreme Court set forth a non-exclusive list of factors to assess reliability. *Daubert*, 503 U.S. at 593–94. Under *Daubert*, the court considers: (1) whether the expert's technique or theory can or has been be tested; (2) whether the technique or theory has been subject to peer review and publication; (3) the known potential error rate of the technique or theory when applied; (4) the existence and maintenance of standards and control; and (5) whether the technique or theory has been generally accepted in the field. *Id.* The court assesses reliability, not whether the conclusion is correct. *Moore*, 151 F.3d at 276.

"The court's role as a gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1078 (5th Cir. 1996). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Generally, any question about an opinion's sources or bases go to the weight of the evidence, to be determined by the factfinder, rather than to admissibility. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (1987).

A court may still exclude evidence if its probative value is substantially outweighed by the risk of, among others, needlessly presenting cumulative evidence or

misleading the jury. Fed. R. Evid. 403. In an analysis under Rule 403, a court may assess the availability of other evidence to prove the same point. *Id.* at 184–85. Still, "when an expert's opinion satisfies the reliability and relevance standards of Rule 702, an expert should generally be permitted to offer that opinion to the trier of fact." *Al-Dahwa v. Am. Multi-Cinema, Inc.*, No. 4:23-CV-02010, 2024 WL 3375500, at *5 (S.D. Tex. July 11, 2024).

## III. Discussion

### A. Graco's motion for partial summary judgment (Dkt. No. 64).

Graco moves for summary judgment, claiming that the Kriegs have no evidence supporting (1) the causation element of their marketing-defect claim; (2) the causation element of their design-defect claim; (3) the safer-alternative-design element of their design-defect claim; and (4) their negligence claim.[1] Def.'s Mot. Summ. J. at 13, Dkt. No. 64. The Court finds that the Kriegs have come forward with sufficient summary-judgment evidence to create a genuine dispute of material fact as to the challenged elements. Order Den. Summ. J., Dkt. No. 113.

#### 1. The Kriegs' summary-judgment evidence creates genuine triable issues as to whether an alleged marketing defect was a producing cause of R.K.'s death.

To prevail at trial on their marketing-defect claim, the Kriegs must show that Graco's failure to warn was a producing cause of R.K.'s death. *See Sims v. Washex Mach. Corp.*, 932 S.W.2d 559, 562 (Tex. App.—Houston [1st Dist.] 1995, no writ).

[1] Graco also argued that the Kriegs had no evidence supporting their gross-negligence claim. The Kriegs later dropped this claim. *Compare* Pls.' 2d Am. Compl., Dkt. No. 111, *with* Pls.' Orig. Compl., Dkt. No. 1; *see also* Pls.' Resp. to Def.'s Mot. Summ. J. at 2 n.1, Dkt. No. 80.

Thus, if the Kriegs fail to make a sufficient showing on producing cause—an essential element of their marketing-defect claim—Graco is entitled to summary judgment. *See Celotex*, 477 U.S. at 323. Graco claims that they are entitled to summary judgment because (a) the Kriegs failed to read the swing's warnings and (b) the swing's warnings and instructions were adequate as a matter of law.

Texas law presumes that that an adequate warning would be followed. *Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 357–59 (Tex. 1993). This presumption aids the claimant's burden of proving producing cause. *Id.* at 358 (quoting *Magro v. Ragsdale Bros., Inc.*, 721 S.W.2d 832, 834 (Tex. 1986)). But the presumption disappears if evidence is presented that the claimant ignored a warning, however inadequate. *Id.* at 359. Evidence on the issue is then evaluated as in any other case. *Id.* If following warnings—however deficient—would prevent an injury, the deficiency is not the cause. *Gillespie v. Century Prods. Col*, 936 S.W.2d 50, 52 (Tex. App.—San Antonio 1996, no writ).

Here, the parties dispute whether the Kriegs read the warnings or not. At Justin Krieg's deposition, he could not recall if he looked at any section other than the assembly instructions, such as the manual's warning section, while assembling the swing. Justin Krieg's Dep. 75:11–16, 76:4–7, 83:20–22, Dkt. No. 64-6. Nor could he recall if he ever looked at the section labeled "to secure child." *Id.* 94:4–12. Abigail Krieg also testified that she did not recall reading specific warnings in the instruction manual. Pl.'s Resp. at 9, Dkt. No. 80. Because the evidence does not establish that the Kriegs ignored the warning, the adequate-warning presumption stands. *See*

*Saenz*, 873 at 359. The Kriegs are entitled to the presumption that they would have heeded an adequate warning. *See id.* Graco has not rebutted the presumption by showing that the Kriegs ignored the swing's warnings. Thus, reviewing the facts in the Kriegs' favor, the Court must presume that that an adequate warning would have been followed, aiding the Kriegs' producing-cause burden. And the adequacy of a product's warning is generally a question of fact for the jury in Texas. *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 170 (Tex. 2012); *McNeil v. Wyeth*, 462 F.3d 364, 368 (5th Cir. 2006). So the summary-judgment evidence does not negate the producing-cause element of the Kriegs' marketing-defect claim.

**2. The Kriegs' summary-judgment evidence creates genuine triable issues as to whether an alleged design defect was a producing cause of R.K.'s death.**

To prevail on their design-defect claim at trial, the Kriegs must establish that the alleged defect was a producing cause of R.K.'s death. *See* Tex. Civ. Prac. & Rem. Code § 82.005(a)(2). The Kriegs allege that the swing's seatback incline and cantilever design rendered the swing defective. Def.'s Mot. Summ. J. at 18, Dkt. No. 64 (citing Singhose Dep. 183:22–184:9, Dkt. No. 64-5; Mannen Dep. 27:18–28:3, 29:19–30:18, 311:5–13, 323:24–24–324:8).

Graco claims that it is entitled to summary judgment because the swing's design was not defective when used as-designed. In other words, Graco asserts that the Kriegs' failure to secure R.K. with the shoulder strap was the producing cause of R.K.'s death. *Id.* But there can be more than one producing cause of an injury. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45 (Tex. 2007). So even if the Kriegs' failure to use the shoulder straps was a producing cause, that does not negate the Kriegs'

theory that the alleged design defect was also a producing cause. And the Kriegs have produced expert testimony from Dr. Singhose and Dr. Mannen to support their claim that a design defect caused the injury. Pls.' Resp. at 19–21, Dkt. No. 80. The Kriegs have produced sufficient summary-judgment evidence to create a genuine triable issue as to the producing-cause element of their design-defect claim.

**3. The Kriegs' summary-judgment evidence creates genuine triable issues as to whether a safer alternative design was feasible.**

To prevail on their design-defect claim at trial, the Kriegs must also establish that a safer alternative design could have prevented R.K.'s death. *See* Tex. Civ. Prac. & Rem. Code § 82.005(a)(1), (b)(1). The proposed alternative design must be technologically and economically feasible. *Id.* § 82.005(b)(2). The Kriegs' proposed alternative designs would include a "firm and flat" surface;[2] an A-frame; and a better five-point harness. Def.'s Mot. at 19–20, Dkt. No. 64. Graco claims that the Kriegs have no evidence to support the alternative-design element because (a) their proposed alternative design is a playmat or crib rather than a swing; (b) their experts failed to test the proposed design; and (c) they have not established the alternative design's economic feasibility. *Id.* at 19.

Under Texas law, a plaintiff cannot prove design defect by claiming that the defendant should have sold "an entirely different product." *Brockert v. Wyeth Pharms., Inc.*, 287 S.W.3d 760, 770 (Tex. Court. App.—Houston [14th Dist.] 2009, no pet.) (citing *Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 384–85 (Tex. 1995)). Graco

[2] The Kriegs define "firm and flat" as "an incline of 10 degrees or less." Pls.' Resp. to Def.'s Mot. Excl. Mannen at 18 n.1, Dkt. No. 78 (referenced in the Kriegs' response to Graco's summary-judgment motion at page 23).

argues that the Kriegs' proposed alternative design, which would have a seat incline of ten degrees or less, is a playmat or crib rather than a swing. Def.'s Mot. at 20, Dkt. No. 64. It thus argues, the Kriegs' proposed alternative design is "insufficient to create a fact question on [the Kriegs'] defect claim" as a matter of law. *Id.*

But, as the Kriegs point out, an earlier version of the DuetConnect could recline to a lower seatback incline. Pls.' Resp. to Def.'s Mot. Excl. Mannen at 18, Dkt. No. 78 (incorporated in Pls.' Resp. to Def.'s Mot. Summ. J. at 23, Dkt. No. 80); DuetSoothe Manual at 26–27, Dkt. No. 78-7. And Graco has not negated the possibility that a swing could have a seat incline of less than ten degrees. So the Kriegs have produced sufficient evidence to create a genuine issue of material fact as to whether a swing can have such an incline.

Texas law also requires a plaintiff to show that a proposed safer alternative design be "capable of being developed." *Genie Indus., Inc. v. Matak*, 462 S.W.3d 1, 7 (Tex. 2015) (quoting *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 592 (Tex. 1999)). "This design need not be actually built and tested." *Id.* "[Q]ualified expert testimony on the issue suffices … if it reasonably supports the conclusion that a reasonable alternative design could have been practically adopted at the time of the sale." *Sanchez*, 997 S.W.2d at 592 (quoting Restatement (Third) of Torts: Prod. Liab. § 2 cmt. f (1998)). And under Fifth-Circuit precedent, "testing can be as simple as applying math and physics to establish the viability of a design." *Sims v. Kia Motors of Am, Inc.*, 839 F.3d 393, 407 (5th Cir. 2016).

Here, Dr. Singhose used "fundamental comparative analysis of cantilevers and

end-supported beams" to test the alternative A-frame design. Pls.' Resp. at 24, Dkt. No. 80. He also included examples of A-frame swings in his expert report. Singhose Rep. ¶¶ 193–195, Dkt. No. 77-1. And Dr. Mannen's opinion is based on studies she conducted for the Consumer Protection Safety Commission (CPSC). Pls.' Resp. at 24, Dkt. No. 80. Thus, the Kriegs have produced sufficient evidence to create a genuine, triable issue as to whether their proposed design could have been developed.

At trial, the Kriegs must also establish that their proposed design was economically feasible. *See* Tex. Civ. Prac. & Rem. Code § 82.005(b)(2). To survive summary judgment, the Kriegs must come forward with sufficient proof to create a material fact issue as to economic feasibility. Applying Texas substantive law, the Fifth Circuit held that a plaintiff failed to demonstrate economic feasibility when there was no evidence of the cost of incorporating the plaintiff's proposed design. *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 334–35 (5th Cir. 2014) (citing *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 306 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)). Here, swings with an A-frame and with an incline of less than ten degrees are used in the industry. Singhose Rep. ¶¶ 193–195; DuetSoothe Manual at 25–26, Dkt. No. 78-7. Use of an alternative design by another manufacturer does not establish economic feasibility. *Sims*, 839 F.3d at 408. But it is some evidence of economic feasibility. Plus, the Fifth Circuit has upheld an expert's statement that an alternative design would cost "next to nothing" based on the expert's decades of experience. *Kim v. Honda Motor Co., Inc.*, 86 F.4th 150, 162–63 (5th Cir. 2023). Here, Dr. Singhose testified that "there's nothing expensive" about an A-frame alternative

design, and Dr. Mannen testified that a firm surface would not be a significant cost. Pls.' Resp. at 25, Dkt. No. 80. Graco did not challenge these experts' qualifications. *See* Def.'s Mot. Excl. Mannen, Dkt. No. 66; Def.'s Mot. Excl. Singhose, Dkt. No. 67. Thus, the Kriegs have produced sufficient evidence to survive summary judgment based on the economic-feasibility component of the alternative-design element.

#### 4. The Kriegs' summary-judgment evidence creates genuine triable issues as to their negligence claim.

The record has sufficient evidence to create a fact issue for the Kriegs' negligence claim. The Kriegs agree that their negligence claim is "subsumed within their products liability claims." Pls.' Resp. at 2 n.1, Dkt. No. 80. Thus, because sufficient evidence supports the products-liability claims, there is enough evidence to create genuine triable issues for the negligence claim. Graco is not entitled to summary judgment on the Kriegs' negligence claims.

The Court therefore denies Graco's summary-judgment motion (Dkt. No. 64). Order Den. Mot. Summ. J., Dkt. No. 113.

### B. The Kriegs' motion to exclude certain expert testimony and opinions of Dr. Goldsmith, Graco's medical expert (Dkt. No. 62).

Graco designated Dr. Goldsmith to testify about the causes of and contributing factors to R.K.'s death. Pls.' Mot. Excl. Goldsmith at 2, Dkt. No. 62. The Kriegs move to exclude any testimony or opinions by Dr. Goldsmith on (1) whether the subject swing caused R.K.'s death; (2) the design and engineering opinions of the Kriegs' experts, Dr. Mannen and Dr. Singhose; and (3) "speculative opinions that are not offered within a reasonable degree of medical probability." *Id.* at 2–3. The Kriegs first argue that Dr. Goldsmith is not qualified to offer design-causation opinions. *Id.* at 5. They

then argue that his opinion that proper use of the swing would have prevented "abnormal positioning" is cumulative because another Graco expert offers the same opinion. *Id.* at 11. Finally, the Kriegs argue that Dr. Goldsmith's opinion that R.K.'s medical condition may have contributed to R.K.'s death is speculative. *Id.* at 13. The Court finds the Kriegs' arguments unpersuasive and denies this motion (Dkt. No. 62) in its entirety. Order on Parties' Mots. Excl., Dkt. No. 114.

**1. Dr. Goldsmith is qualified to testify about whether the Kriegs' misuse of the swing contributed to R.K.'s death.**

The parties agree that Dr. Goldsmith is qualified to give medical opinions. Pls.' Mot. at 2, Dkt. No. 62. Instead, the Kriegs argue that the Court should disallow Dr. Goldsmith from offering design opinions because he is unqualified "to offer biomechanical or engineering opinions." *Id.* at 6. But Dr. Goldsmith's opinions have to do with the Kriegs' alleged improper use of the swing as a factor in R.K.'s death. Goldsmith Rep. at 7, Dkt. No. 62-3. His opinions are not about the swing's design. For example, Dr. Goldsmith opines that R.K.'s death "was more likely than not due to the unsafe use of the product in a manner contrary to its warnings and instructions." *Id.* The Court agrees that these are medical opinions. Def.'s Resp. at 3–4, Dkt. No. 82. Graco has shown by a preponderance of the evidence that Dr. Goldsmith is qualified to opine whether the swing's design caused or contributed to R.K.'s death from a medical perspective.

**2. Dr. Goldsmith is qualified to rebut the medical conclusions underlying the opinions of Dr. Mannen and Dr. Singhose.**

The Kriegs likewise argue that Dr. Goldsmith is unqualified to rebut opinions of the Kriegs' engineering experts, Drs. Mannen and Singhose. Pls.' Mot. at 8, Dkt.

No. 62. Graco argues that the opinions of Drs. Mannen and Singhose "necessarily rest on medical assumptions—most critically, the assumption that the seat angle or chin-to-chest positioning in the swing could cause fatal asphyxia in a 9-month-old infant." Pls.' Resp. at 4, Dkt. No. 82. Dr. Singhose "defers to medical doctors on whether any particular position presents a risk of respiratory injury." *Id.* at 4–5. Graco has shown that Dr. Goldsmith is more likely than not qualified to rebut the medical conclusions underlying the engineering opinions of Drs. Mannen and Singhose. Dr. Goldsmith would offer medical, not engineering opinions.

**3. Dr. Goldsmith's alternative-causation opinions are not speculative.**

The Kriegs take issue with Dr. Goldsmith's alternative-causation opinions, arguing that they are not offered "within a reasonable degree of medical probability." Pls.' Mot. at 13, Dkt. No. 62. While an expert opinion "must rest in reasonable medical probability to constitute evidence of causation," reasonable probability depends on the opinion's "substance and context" rather than semantics. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995). The Court's concern is reliability. *See Spaulding v. United States*, 241 Fed. App'x 187, 190–191 (5th Cir. 2007).

Here, Dr. Goldsmith's "primary opinion" is "that R.K.'s death was 'more likely than not' due to [Sudden Unexpected Infant Death]." Def.'s Resp. at 6–7, Dkt. No. 82 (quoting Goldsmith Rep. at 7, Dkt. No. 82-1). Dr. Goldsmith would opine as to the factors he thinks caused R.K.'s death based on the "triple risk theory," used to determine the cause of Sudden Infant Death Syndrome. Goldsmith Rep. at 6. He reviewed photographs, investigative materials, the Kriegs' depositions, the Kriegs' experts' reports, product information, medical records, litigation documents, and a surrogate

demonstration attended by Zoom. *Id.* at 2–4. He applied the triple risk theory to the facts of the case that he learned from reviewing the materials. The Court finds that Graco has shown by a preponderance of the evidence that Dr. Goldsmith's opinions reflect a reliable application of reliable principles and methods to these facts.

**4. Dr. Goldsmith's alternative-causation opinions are not cumulative.**

Dr. Goldsmith would opine that using the shoulder straps would have prevented R.K.'s death. Goldsmith Dep. 82:7–14, Dkt. No. 62-2; Goldsmith Rep. at 8. The Kriegs argue that the Court should disallow Dr. Goldsmith from giving this testimony at trial because Dr. Prange offers the same opinion. Pls.' Mot. at 11, Dkt. No. 62. But Dr. Goldsmith gives this opinion from a medical perspective, discussing the failure to use the five-point harness as a risk factor under the "triple risk theory" model. Goldsmith Rep. at 6–8. Dr. Prange offers the opinion from a biomechanical perspective. In his report, Dr. Prange writes that "the 5-point straps secure the child … and do not allow the child to reach a position outside the seat frame." Prange Rep. at 13, Dkt. No. 63-2. So Dr. Goldsmith's opinion is not "needlessly cumulative" under Rule 403. Moreover, the Kriegs fail to show that any risk of presenting a cumulative opinion substantially outweighs the testimony's probative value.

Because the Court finds that Graco has met its burden in showing that Dr. Goldsmith's opinions are relevant and reliable, it denies the Kriegs' motion to exclude his testimony (Dkt. No. 62). Order on Parties' Mots. Excl., Dkt. No. 114.

### C. The Kriegs' motion to exclude certain expert testimony and opinions of Dr. Prange, Graco's biomechanical-engineer expert (Dkt. No. 63).

Graco designated Dr. Prange to testify about the swing's design and to support Graco's alternative causation theories. The Kriegs ask the Court to preclude Dr. Prange from testifying that (1) the swing was sold with pre-threaded shoulder straps; (2) Graco's design process for the swing was "thorough, reasonable, and consistent with industry consensus;" (3) the swing's lap straps were not snugly adjusted at the time of the incident; and (4) the swing's design does not position an infant in a way that would increase the risk of positional asphyxia. Pls.' Mot. Excl. Prange at 2–3, Dkt. No. 63. The Kriegs argue that Graco cannot show that Dr. Prange's testimony and opinions are based on sufficient facts by a preponderance of the evidence and the product of reliable methodology. *See id.* at 4, 5, 7. The Court finds that Graco has met its burden and denies the Kriegs' motion (Dkt. No. 63). Order on Parties' Mots. Excl., Dkt. No. 114.

#### 1. Dr. Prange's shoulder-strap, design-process, and lap-strap testimony are based on sufficient facts.

The Kriegs argue that Dr. Prange's opinions are unreliable because they are based on insufficient facts or data. Pls.' Mot. at 5, Dkt. No. 63. Dr. Prange's opinion that shoulder straps would have avoided R.K.'s death is based on a conversation with a Graco employee and his experience with an exemplar swing. *Id.* at 5; Def.'s Resp. at 4, Dkt. No. 83. Dr. Prange's design-process opinion is based on Graco testing and design documents, third-party testing documents, Graco's work with third-party organizations to develop standards, and conversations with Graco employees. Def.'s Resp. at 8, Dkt. No. 83. And Dr. Prange's lap-strap opinion is based on a surrogate

test he performed. *Id.* at 10. The Court finds that each opinion has a factual basis. An expert opinion's basis usually goes to weight rather than admissibility. *Fair v. Allen*, 669 F.3d 601, 607 (5th Cir. 2012). The Kriegs may challenge Dr. Prange's opinions on these grounds at trial. Graco has shown by a preponderance of the evidence that Dr. Prange's testimony is based on sufficient facts or data.

**2. Dr. Prange's opinion that the swing's design does not place infants at risk of positional asphyxia is the product of reliable methodology.**

The Kriegs claim Graco did not sufficiently disclose the methodology that Dr. Prange used to determine that a child would not be at risk of positional asphyxia if the restraint system is used. Pls.' Mot. at 12, Dkt. No. 63. But Dr. Prange explains the methodology he used in his studies in his expert report. Dr. Prange analyzed an exemplar with a surrogate child, using the lap belt but not the shoulder straps. Prange Rep. at 15, Dkt. No. 63-2. The Kriegs also criticize the amount of time Dr. Prange spent on the study, and that the surrogate child used in the testing was older and larger than R.K. was at the time of the incident. Pls.' Mot. at 13, Dkt. No. 63. Graco correctly responds that such issues with the study's methodology go to the weight of the evidence and are the proper subject of cross-examination at trial. Def.'s Resp. at 11, Dkt. No. 83. Graco has shown by a preponderance of the evidence that Dr. Prange's testimony is the product of reliable methods.

The Court denies the Kriegs' motion to exclude Dr. Prange's testimony (Dkt. No. 63) because Graco has shown the Court that Dr. Prange's testimony is more likely than not based on sufficient facts and is the product of reliable methods. Order on Parties' Mots. Excl., Dkt. No. 114.

**D. Graco's motion to exclude certain expert testimony and opinions of Dr. Li, the Kriegs' human-factors and warnings expert (Dkt. No. 65).**

The Kriegs designated Dr. Li to testify about the swing's instructions and warnings. Graco asks the Court to preclude Dr. Li from testifying or opining (1) that the swing is difficult to assemble and the instructions can be improved; (2) about why Justin Krieg failed to use the swing's shoulder straps; and (3) that different on-product labels would have changed the case's outcome. Def.'s Mot. Excl. Li at 2–3, 13, Dkt. No. 65. Graco first argues that Li's difficult-assembly opinion is the product of unreliable methodology, based on insufficient data, and is not sufficiently tied to the case's facts. *Id.* at 5–8. Graco also argues that Dr. Li's opinion as to why Justin Krieg failed to use the shoulder straps is speculative. *Id.* at 10–13. Then, Graco argues that Dr. Li's causation arguments are unreliable. *Id.* at 13–16. Graco also argues that Dr. Li's testimony would mislead the jury. *Id.* at 9–10, 13. The Court grants Graco's motion (Dkt. No. 65) in part, ordering that Dr. Li may not speculate as to the Kriegs' subjective thoughts or knowledge. The remainder of the motion (Dkt. No. 65) is denied. Order on Parties' Mots. Excl., Dkt. No. 114.

**1. Dr. Li's opinion that the deficient instructions made the swing difficult to assemble is based on reliable methodology.**

The Kriegs must establish by a preponderance of the evidence that Dr. Li's opinion that the swing's instructions were deficient was the product of reliable methodology. *See* Fed. R. Evid. 702(c). Li's methodology was to assemble an exemplar swing using the swing's instruction manual. Def.'s Mot. at 5, Dkt. No. 65; Li Rep. ¶ 22, Dkt. No. 65-2. He also used his warnings and human-factors expertise in reaching his opinions. Pls.' Resp. at 8, Dkt. No. 76. According to the Kriegs, personal assembly

is recognized as a proper methodology for human-factors opinions. *Id.* at 7. Graco does not "challenge the general use of exemplars by expert witnesses." Def.'s Reply at 2, Dkt. No. 92. Rather, it challenges the fact that Dr. Li assembled a previously disassembled exemplar rather than a new product. *Id.* This argument is discussed below. The Kriegs have shown by a preponderance of the evidence that Dr. Li's methodology, personal assembly of an exemplar swing, is a reliable methodology based on the case's facts.

**2. Dr. Li's opinion about difficult assembly is based on sufficient facts.**

The Kriegs must also establish by a preponderance of the evidence that Dr. Li's deficient-instruction opinion was based on sufficient facts. *See* Fed. R. Evid. 702(b). Dr. Li based his opinion on a previously disassembled exemplar swing. Def.'s Mot. at 7, Dkt. No. 65. Justin Krieg had previously disassembled and re-assembled the Kriegs' swing before R.K.'s death. Pls.' Resp. at 10, Dkt. No. 76. So using a previously disassembled swing more closely matches the facts here than using a new swing. Dr. Li also "reviewed thousands of pages of material in this case," including the Kriegs' depositions, the instruction manuals, and the on-product warning labels. Li Rep. ¶ 2. The Kriegs have shown that this opinion is more likely than not based on sufficient facts.

**3. Dr. Li's difficult-assembly opinion is sufficiently tied to the facts of the case.**

Graco argues that Dr. Li's testimony that the swing's assembly instructions rendered assembling the swing difficult does not fit the facts of this case. Def.'s Mot. at 8, Dkt. No. 65. Dr. Li said he had difficulty assembling the swing, but Justin Krieg

said he did not. *Id.* But Dr. Li explained that a user who omits a step he was never instructed to perform will believe he assembled the product correctly. Pls.' Resp. at 11, Dkt. No. 76 (quoting Li Dep. at 111:19–112:8, Dkt. No. 76-2). The Kriegs state that Dr. Li's testimony and opinion will help explain why Justin Krieg did not have the shoulder straps properly assembled, a fact which is at issue. *Id.* The Court finds the Kriegs' argument persuasive and that this opinion sufficiently fits the facts.

**4. Dr. Li's general opinion, that consumers may not have known to use the shoulder straps because of the swing's instructions, is not speculative; but any testimony as to the Kriegs' subjective thoughts or knowledge would be speculative.**

Graco argues that Dr. Li's "speculative theories about why [Justin] Krieg did not use the shoulder straps with R.K. … are untethered to the evidentiary record." Def.'s Mot. at 10, Dkt. No. 65. Dr. Li opines that, by not including "a definitive step instructing how to feed the shoulder straps through the seat pad, Graco jeopardizes and compromises the correct use of the safety restraint system." Li Rep. ¶ 76. This omission "is a source of error for end customers[, who] could improperly buckle their infant into the product by using only the lap and crotch belt." *Id.* Justin Krieg only used the lap belt to restrain R.K. and testified that "he believed the waist strap alone was sufficient." Def.'s Mot. at 11, Dkt. No. 65. Dr. Li based this opinion about "end customers" on his review of the instruction manual, which failed to instruct consumers on how to feed the shoulder straps into the swing chair. *See* Pls.' Resp. at 12–13, Dkt. No. 76. This general opinion does not contradict Justin Krieg's testimony that he did not think he needed to use the shoulder straps. It explains that fact, which is at issue. *Id.* at 14. So the opinion is relevant. And this general opinion is reliably

based on his human-factors expertise, not any speculation into Justin Krieg's subjective knowledge. *Id.* at 15.

In his deposition, Dr. Li states that his "feeling" is that Justin Krieg did not know how to thread the shoulder straps through the back of the seat. Li Dep. 189:20–25. He also suggests that Justin Krieg may have forgotten about the shoulder straps. *Id.* 191:14–192:10. He testifies that the problem is the manual's failure to instruct users to put the shoulder straps through the seatback. *Id.* 192:11–15. He bases this testimony on is his "feeling" and his ability to "imagine being a harried parent." *Id.* 189:24, 192:3–4. Dr. Li explains that his earlier, general opinion applies to the Kriegs as end users. Pls.' Resp. at 12, Dkt. No. 76. But the Kriegs do not point to anywhere in the record that shows that Justin Krieg did not know, or forgot, to thread the shoulder straps through the seatback. *See id.* at 12–15. Thus, any specific opinions as to Justin Krieg's subjective experience is not based on a reliable application of reliable principles to the facts of the case.

The Kriegs have shown by a preponderance of the evidence that Dr. Li's opinion on why customers may fail to use the shoulder straps is based on sufficient facts that fit this case. But Dr. Li may not speculate as to the Kriegs' subjective thoughts or knowledge.

**5. Dr. Li's causation opinion is based on sufficient facts and data.**

Graco further argues that Dr. Li's opinions that different warnings may have changed the outcome of this case have no evidentiary or scientific foundation. Def.'s Mot. at 13, Dkt. No. 65. Graco argues that foundation is lacking because (1) Dr. Li says only that changes "*may have*" prevented the incident and did no testing, and

(2) the study he relies on does not fit this case. *Id.* at 13–16.

"Proof of causation requires more than conjecture or guess." *Mosley v. Excel Corp.*, 109 F.3d 1006, 1009 (5th Cir. 1997) (citing *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 477 (Tex. 1995)). But a Court need only find that an opinion is reliable, not that it is correct. *Moore*, 151 F.3d at 276. Reliability does not require certainty. In fact, "[t]here is always some degree of uncertainty when a litigant seeks to establish causation by expert testimony." *Robertson v. Douglas S.S. Co.*, 510 F.2d 829, 834 (5th Cir. 1975). Graco argues that this opinion is speculative because Justin Krieg testified that he did not read any on-product labels, including one already next to R.K.'s head. Def.'s Mot. at 14, Dkt. No. 65. Whether different warnings would have caused Justin Krieg to read those labels is a fact issue for the jury to decide.

Dr. Li's causation opinion is based on a study, the Blackler Study, that looked at individuals' interactions with manuals. *Id.* at 15. That study did not involve children's products or swings, and its authors stated that its results "may not be generalizable across product types." *Id.* Thus, Graco argues, this opinion is an analytical leap the Court should exclude under *Daubert*. *Id.* at 16. But Dr. Li also read case depositions, reviewed the product's instruction manual, and examined the product. Li Rep. ¶ 2. He specifies that this opinion is "[b]ased on the Kriegs' depositions that they did not see the 'not safe for sleep' warnings." *Id.* ¶ 77. And he explained why the Blackler study could apply to juvenile products. Pls.' Resp. at 18, Dkt. No. 76. The Kriegs have shown by a preponderance of the evidence that Dr. Li's testimony is based on sufficient facts—relevant case evidence—and data—the Blacker study. The

Court finds that Dr. Li's causation opinion is more likely than not relevant and reliable.

**6. Any risk that Dr. Li's testimony would mislead the jury does not substantially outweigh the testimony's probative value.**

Graco also argues that Dr. Li's testimony would mislead the jury. A court may exclude relevant evidence if the risk of misleading the jury substantially outweighs the evidence's probative value. Fed. R. Evid. 403. And expert testimony "is generally required" to prove causation. *Goodner v. Hyundai Motor Co., Ltd.*, 650 F.3d 1034, 1045 (5th Cir. 2011) (quoting *BIC Pen Corp. v. Carter*, 346 S.W.3d 533, 542 (Tex. 2011)). So reliable and relevant expert testimony on causation will generally have a high probative value. Graco does not cite to Rule 403 in moving to exclude any of Li's testimony or opinions. Graco also fails to show that any risk of misleading the jury substantially outweighs the evidence's probative value. The Court is unpersuaded that Dr. Li's testimony should be excluded under Rule 403.

The Court grants Graco's motion in part and excludes certain testimony and opinions of Dr. Li (Dkt. No. 65). Dr. Li may not testify as to the Kriegs' subjective thoughts and beliefs. Otherwise, Graco's motion (Dkt. No. 65) is denied. Order on Parties' Mots. Excl., Dkt. No. 114.

**E. Graco's motion to exclude certain expert testimony and opinions of Dr. Mannen, the Kriegs' biomechanical expert (Dkt. No. 66).**

The Kriegs designated Dr. Mannen to testify as to the swing's alleged design defect, how the swing's design may have contributed to R.K.'s death, and the Kriegs' proposed alternative design. Graco asks the Court to preclude Dr. Mannen from testifying or opining that (1) the swing's design could lead to respiratory issues; (2) a

harness may not have prevented R.K.'s death; (3) the swing could lead to positional asphyxiation generally and in R.K.'s case; and (4) the swing's design would allow a child's face to come into contact with the swing's fabric, possibly leading to suffocation. Def.'s Mot. Excl. Mannen at 12, 16–17, 19, Dkt. No. 66.

Graco first argues that Dr. Mannen's opinion tying the swing's design to respiratory issues is not based on sufficient data. *Id.* at 12. Next, Graco argues that Dr. Mannen did not apply the same scientific rigor here as she would in the field. Dkt. No. 66 at 15. Graco then argues that Dr. Mannen's shoulder-strap and causation opinions are speculative. *Id.* at 16, 19. Graco also argues that Dr. Mannen's face-contact opinion is irrelevant. *Id.* at 17. The Court finds Graco's arguments unpersuasive and denies its motion to exclude Dr. Mannen's testimony (Dkt. No. 66). Order on Parties' Mots. Excl., Dkt. No. 114.

1. **Dr. Mannen's failure to disclose the CPSC studies underlying her opinions on the swing's biomechanical properties does not render the opinions unreliable.**

Experts must disclose whatever data they considered in forming their opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). This disclosure requirement avoids presenting "sketchy and vague" expert information. *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996). A party that fails to disclose information under Rule 26(a) may not use that information to supply evidence at trial unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). But an expert report that merely implies a legal conclusion can satisfy Rule 26(a)(2)(B). *Michaels v. Avitech, Inc.*, 202 F.3d 746, 749 (5th Cir. 2000); see also *Rogers v. United States*, at *5–*8 No. EP-03-CA-00343-KC, 2006 WL 616908 (W.D. Tex. Mar. 8, 2006) (discussing *Avitech* and *Sierra Club*).

Here, Dr. Mannen relied on studies she performed for the CPSC (the CPSC studies). Def.'s Mot. at 4, Dkt. No. 66. Graco has the studies' reports and attached them to its motion. *Id.*; CPSC Reps., Dkt. No. 66-2, 66-3. But the Kriegs and Dr. Mannen have not disclosed what products were included in the CPSC studies, citing a confidentiality agreement. Def.'s Mot. at 2, 5, 6–7, Dkt. No. 66; Pls.' Resp. at 2, Dkt. No. 78. Still, Graco knows what types of products were included in the CPSC studies and that the DuetConnect was not part of either study. Def.'s Mot. at 4, 6–7, Dkt. No. 66. Graco argues that Dr. Mannen's opinions based on the CPSC studies should be excluded because the failure to disclose renders those opinions unverifiable. Def.'s Reply at 3, Dkt. No. 93. The Kriegs argue that Dr. Mannen isolated seat-back incline as a variable, removing other variables, so that the specific products used in the studies are largely irrelevant. Pls.' Resp. at 9–11, Dkt. No. 78.

Dr. Mannen disclosed the data she considered in forming her opinions. And the Kriegs provided Graco with the underlying studies' reports (Dkt. No. 66-2, 66-3). The specific products tested in the sleeper study were the only substantive information that was redacted. CPSC Rep. at 72–73, Dkt. No. 66-2. The seated-product report includes pictures and information on the products tested. CPSC Rep. at 33–34, Dkt. No. 66-3. This information is not "sketchy or vague." *See Sierra Club*, 73 F.3d at 571. Graco never moved to compel disclosure of the products used in the studies, arguably manufacturing prejudice for their *Daubert* motion. *See* Pls.' Resp. at 14, Dkt. No. 78. Graco can articulate several reasons why the studies may be questionable: neither the DuetConnect, nor any other baby swing; was included; the studies included

children younger than R.K. was at death; and other variables that may have affected the underlying studies' results. Def.'s Mot. at 4–9, Dkt. No. 66. So Graco has fodder to challenge the studies underlying Dr. Mannen's opinions on cross-examination.

To determine whether excluding expert evidence as a sanction for violating a discovery order is proper, courts consider (a) the explanation for failure to disclose; (b) the testimony's importance; (c) potential prejudice in allowing the testimony; and (d) availability of a continuance to cure such prejudice. *Moore v. CITGO Refin. & Chems. Co., L.P.*, 735 F.3d 309 (5th Cir. 2013) (quoting *Sierra Club*, 73 F.3d at 572). The court may exclude the testimony even if the objecting party has not first moved to compel disclosure. *Sierra Club*, 73 F.3d at 572. The Court may also impose other or additional sanctions. Fed. R. Civ. P. 37(c)(1)(C). For example, a Texas district court decided to impose a lesser sanction than exclusion when dealing with a similar issue. *Kim v. Nationwide Mut. Ins. Co.*, 614 F. Supp. 3d 475, 485 (N.D. Tex. 2022). Instead, that court ordered the proponent to serve an amended report that fully complied with Rule 26(a)(2)(B). *Id.*

The *Sierra Club* factors disfavor excluding Dr. Mannen's opinions. The Kriegs explain that they redacted the products used in the CPSC studies because of a confidentiality agreement. The Kriegs cannot defeat a discovery order with a confidentiality agreement. *Sig M. Glukstad, Inc. v. Lineas Aereas Nacional-Chile*, 656 F.2d 976, 979 (5th Cir. 1981). But this Court never ordered disclosure of the products. So this factor does not weigh towards exclusion. Dr. Mannen's testimony is important because it goes to all three elements of the Kriegs' design-defect claim. This weighs

against exclusion. If Dr. Mannen is allowed to testify, Graco can still challenge her opinions and their bases through the adversarial process. Thus, allowing the testimony will not prejudice Graco. This also weighs against exclusion. Finally, the Court will not grant a continuance to cure. The Court could still order disclosure before trial. But Graco has not moved to compel disclosure, so the issue of disclosure is not before the Court. The Court finds that exclusion is not warranted on this basis.

**2. Dr. Mannen's opinions on the swing's biomechanical properties are not unreliable.**

Graco further argues that Dr. Mannen failed to use the same scientific rigor in tests for this litigation. Def.'s Mot. at 15, Dkt. No. 66. The expert must use the same intellectual rigor in litigation as in the field. *Kumho Tire Co., Ltd. v. Carmichael*, 529 U.S. 137, 152 (1999). Dr. Mannen conducted "controlled testing with live infant subjects" for the CPSC studies but failed to conduct any live-infant testing for this litigation. Def.'s Mot. at 15, Dkt. No. 66. The Court's gatekeeping requirement under *Daubert* is to ensure reliability and relevance. *Kumho Tire*, 526 U.S. at 152. That a study used live children does not mean that all studies in the field must use live children. Dr. Mannen used the CPSC studies' results, peer-reviewed publications, and public CPSC reports in forming her opinions for this litigation. Pls.' Resp. at 15, Dkt. No. 78. Any failure to conduct live testing for this case goes to the weight of the evidence rather than admissibility. The Kriegs have shown that Dr. Mannen's opinions are reliable by a preponderance of the evidence.

**3. Dr. Mannen's opinion that shoulder straps would not have prevented this incident are not speculative.**

Dr. Mannen would opine that shoulder straps may not have prevented R.K.'s

death because "infants can get out [the shoulder straps]." Def.'s Mot. at 16, Dkt. No. 66 (quoting Mannen Dep. 281:16–282:11, Dkt. No. 66-4). Graco argues this opinion should be excluded as speculative because Dr. Mannen did not analyze the swing's harness "or assess the circumstances or likelihood of R.K. escaping it." *Id.* But Dr. Mannen stated in her deposition that she "observed the restraint system" and, with her juvenile-products experience, had enough information to come to her opinions. Pls.' Resp. at 17, Dkt. No. 78 (citing Mannen Dep. at 278:5–16, 281:8–15). So the Kriegs have shown by a preponderance of the evidence Dr. Mannen's opinion is based on sufficient facts and data.

**4. Dr. Mannen's opinion that a safe alternative design would have a firm, flat surface is not irrelevant.**

Dr. Mannen would opine that a safer alternative design for the swing would incorporate a firm, flat surface, defining flat as less than a ten-degree incline. Def.'s Reply at 5, Dkt. No. 93. Graco argues that this opinion is irrelevant because a product with a firm, flat surface is more like a crib than a swing. Def.'s Mot. at 18, Dkt. No. 66. Expert testimony must be relevant because irrelevant evidence is non-helpful. *Daubert*, 509 U.S. at 591. Evidence is relevant if it has any tendency to make a material fact more or less probable than without the evidence. Fed. R. Evid. 401. The DuetConnect's back had an incline greater than ten degrees. Dr. Mannen's opinion makes it more probable than not that a swing with a seatback of ten degrees or less would be safer. So this opinion is relevant. A material fact is one of consequence in determine the action. *Id.* A safer alternative design is a required element of the Kriegs' design-defect claim. So this testimony is material. The Kriegs have shown by

a preponderance of the evidence that this opinion will help the jury resolve whether the Kriegs' proposed alternative design would be safer.

**5. The Kriegs state that Dr. Mannen will not offer any opinions about the product's concavity or facial contact with the product's soft goods.**

Graco argues that the Court should preclude Dr. Mannen from opining that the swing's design makes it easier for the faces of unharnessed children to come into contact with the swing's fabric. Def.'s Mot. at 17, Dkt. No. 66. Graco states that this opinion is irrelevant. *Id.* But the Kriegs state that "Dr. Mannen will not offer any opinions at trial regarding the concavity of the product and potential contact with the soft goods, nor that R.K. rolled from a supine to prone position." Pls.' Resp. at 20, Dkt. No. 78. The Court agrees with the Kriegs that this fact renders Graco's argument against these opinions moot. *See id.*

The Court denies Graco's motion to exclude certain testimony and opinions by Dr. Mannen (Dkt. No. 66). Order on Parties' Mots. Excl., Dkt. No. 114.

**F. Graco's motion to exclude certain expert testimony and opinions of Dr. Singhose, the Kriegs' mechanical-engineering expert (Dkt. No. 67).**

The Kriegs designated Dr. Singhose to testify about "the design of the product and the hazards that it presents." Singhose Rep. ¶ 3, Dkt. No. 67-1. Graco asks the Court to preclude Dr. Singhose from testifying or opining (1) that the swing's cantilever design is defective and unreasonably dangerous; (2) that the swing's design was a producing cause of R.K.'s death; (3) that an A-frame would be a safer alternative design; (4) that R.K. may have been able to move out of the swing's shoulder straps; and (5) why consumers like the Kriegs may not know how to use the shoulder straps

because of the swing's assembly manual. *See* Def.'s Mot. Excl. Singhose at 3, 6–8, Dkt. No. 67; Def.'s Reply at 3 n.1, Dkt. No. 94. Graco first argues that Dr. Singhose's design-defect opinions are irrelevant and unreliable. Def.'s Mot. 5–6, Dkt. No. 67. Graco then argues that Dr. Singhose's opinion regarding movement out of the shoulder straps is not the product of reliable methodology. *Id.* at 8–9. In its reply, Graco also argues that Dr. Singhose's opinion about the difficulty of following assembly instructions is cumulative and outside Dr. Singhose's expertise. Def. Reply at 3 n.1, Dkt. No. 94.[3] The Court finds Graco's arguments unpersuasive and denies its motion to exclude Dr. Singhose's testimony (Dkt. No. 67). Order on Parties' Mots. Excl., Dkt. No. 114.

**1. Dr. Singhose's causation opinion is relevant.**

Dr. Singhose would opine that the swing's design contributed to R.K.'s death. *See* Def.'s Mot., Dkt. No. 67 at 6. Graco argues that the causation opinion is irrelevant because Dr. Singhose admitted that the incident would not have occurred had R.K. been secured with the harness system. Def.'s Mot. at 5–6, Dkt. No. 67. An undisputed fact here is that R.K. was not secured with the shoulder straps. *See* Pls.' Resp. at 7, Dkt. No. 77. So Dr. Singhose's testimony, based on R.K. not wearing the shoulder straps, fits these facts. *Id.* at 8. Dr. Singhose's opinion offers an explanation for why R.K. moved into the position that the Kriegs believe caused his death. Whether the design was a producing cause of R.K.'s death is at issue. So, his design opinion is

[3] While Graco delegates these issues to a footnote in the reply, the Court addresses them for the sake of completeness. Graco is reminded that "[l]itigants may not raise arguments for the first time in a reply brief." *United States v. Muhammad*, 14 F.4th 352, 363 n.3 (5th Cir. 2021). But even if Graco properly raised in its motion, the arguments fail, as discussed below.

relevant to a material fact under Federal Evidence Rule 401.

Graco further argues that Dr. Singhose did not analyze the effect of "deflection" on the incident. Def.'s Mot. at 6–7, Dkt. No. 67. It also argues that Dr. Singhose's deflection opinions do not fit these facts. *Id.* at 7. According to Dr. Singhose, deflection is a byproduct of the swing's cantilever design. Singhose Rep. ¶ 93, Dkt. No. 67-1. Dr. Singhose explains that the swing's structure will "bend downward to the right." *Id.* ¶ 91. He states that this "downward deflection" "contributes to the baby moving out of a safe position." *Id.* Graco complains of Dr. Singhose's failure to "assess how far forward R.K. needed to have leaned" to cause the incident. Def.'s Mot. at 7, Dkt. No. 67. It also complains of Dr. Singhose's failure to conduct testing to determine whether reducing deflection would have affected R.K.'s ability to get into the position that caused his death. *Id.* An expert's opinion must reflect a reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702(d). Experts may rely on the types of facts and data that other experts in the field would consider. *Id.* 703. Dr. Singhose looked at the effect of deflection based on engineering principles. Singhose Rep. ¶ 95. He applied these principles to the swing's structure. *Id.* ¶ 91. Any issues that Graco has with Dr. Singhose's testing goes to the weight of the evidence and can be raised on cross-examination. The Kriegs have proved by a preponderance of the evidence that Dr. Singhose's design-defect testimony is relevant and reliable.

**2. Dr. Singhose's causation opinion is reliable.**

Graco argues that Dr. Singhose cannot reliably opine that alleged design defects were a substantial factor in causing R.K.'s death. Def.'s Mot. at 6, Dkt. No. 67. Yet the testing, standards, and publication factors set forth in *Daubert*—the only

factors the parties discuss—weigh in favor of finding the opinion reliable. Dr. Singhose tested the effect of weight and movement on the swing's cantilever design and seat incline. Singhose Rep. ¶¶ 104–35, Dkt. No. 67-1. To replicate the case's known facts, he did not use the shoulder straps. Pls.' Resp. at 8, Dkt. No. 77. By conducting testing without the shoulder straps, Dr. Singhose reliably applied these testing methods to the facts of the case. Plus, industry standards are intended to cover foreseeable misuse. *Id.* at 9 (discussing Standard Consumer Safety Specifications). Dr. Singhose's methods for this litigation mirror methods he used in peer-reviewed publications. Singhose Rep. ¶ 104. "[Dr. Singhose's] test methods are similar to Graco's own testing methods." *Id.* This does not validate Dr. Singhose's opinion. Def.'s Reply at 4, Dkt. No. 94. But it does corroborate its underlying methodology. Weighing an expert's reliability is in a district court's discretion. This Court does not find Dr. Singhose's opinion so lacking. The Kriegs have shown by a preponderance of the evidence that Dr. Singhose's causation opinions are reliable.

**3. Dr. Singhose's alternative-design opinion is reliable.**

Graco also argues that Dr. Singhose cannot reliably opine about the Kriegs' proposed alternative design, which incorporates an A-frame, because he did not test such swings. Def.'s Mot. at 7, Dkt. No. 67. But Dr. Singhose's opinion can be tested and is the product of engineering principles. Dr. Singhose's report contrasts the load-bearing abilities of end-supported structures, such as A-frames, to cantilever-design structures. Pls.' Resp. at 14, Dkt. No. 77; Singhose Rep. ¶¶ 93–97. He concludes that an "end-supported beam can rigidly, and safely, hold a wide variety of loads." Singhose Rep. ¶ 97. He cites "Mark's Standard Handbook for Mathematical

Engineers." *Id.* ¶ 94. These engineering principles support his opinion that an A-frame, which would be more stable, would be a safer alternative design to the canti-lever design. *Id.* ¶ 194. The Kriegs have shown by a preponderance of the evidence that Dr. Singhose's alternative-design opinion is reliable.

**4. Dr. Singhose's opinion that children can get out of the shoulder straps is the product of reliable methodology.**

Graco argues that Dr. Singhose's testimony "that R.K. may been able to wiggle out of his shoulder restraints is not the product of reliable methodology." Def.'s Mot. at 9, Dkt. No. 67. It claims that this testimony is unreliable because it is only based on his personal experience with his own children and car seats. *Id.* But Dr. Singhose also bases his opinion on product reviews and his comparative analysis between the swing's five-point harness and that of a car seat. Pls.' Resp. at 16–17, Dkt. No. 77. According to Singhose, collecting and analyzing online reviews is a "commonly-used method to obtain information about the design of a product." *Id.* at 16. Graco replies that "the online products reviews do not support Dr. Singhose's opinion." Def.'s Reply at 6, Dkt. No. 94. But it does not challenge analyzing reviews as a reliable methodol-ogy. *See id.* The Kriegs have shown by a preponderance of the evidence that this opin-ion is the product of reliable methodology.

**5. Dr. Singhose's testimony that the assembly instructions are diffi-cult to follow is not cumulative.**

Graco argues in its reply that the Court should exclude Dr. Singhose's testi-mony on the difficulty of following the assembly instruction because it is cumulative. Def.'s Reply at 3 n.1, Dkt. No. 94. It argues that Dr. Li, another of the Kriegs' experts, will also testify as to the assembly instructions' difficulty. *Id.* But Dr. Singhose pairs

his assembly-instruction opinion with a design opinion, stating that the product's design made some of the steps "difficult to perform." Singhose Rep. ¶¶ 33–38. Dr. Li's opinion is from a human-factors perspective, discussing how consumers interact with products and their instructions. *See, e.g.*, Li Rep. at 27, Dkt. No. 65-2. So the opinion is neither needlessly cumulative nor merely repetitious.

**6. Dr. Singhose's testimony that the assembly instructions are difficult to follow is not outside his expertise.**

Finally, Graco argues that "Dr. Singhose's warning opinions should also be excluded as … outside his area of expertise." Def.'s Reply at 3 n.1, Dkt. No. 94. An expert generally may not testify beyond the scope of his expertise. *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009). Dr. Singhose's expertise is in juvenile products, including their design. Singhose Rep. ¶¶ 1–29. Specifically, he has conducted human-testing and observed that "ways in which humans do not use products exactly as the designers intend." *Id.* ¶ 18. Assembly instructions bridge how consumers interact with products. Thus, Dr. Singhose's opinions that the assembly instructions were difficult to follow is not outside his expertise.

The court denies Graco's motion to exclude certain opinions and testimony by Dr. Singhose (Dkt. No. 67). Order on Parties' Mots. Excl., Dkt. No. 114.

## IV. Conclusion

The Court finds that Graco's summary-judgment motion (Dkt. No. 64) should be **DENIED**. The Court also finds that Graco's motion to exclude testimony by Dr. Li (Dkt. No. 65) should be **GRANTED-IN-PART** as follows: Li may not speculate as to the Kriegs' subjective thoughts or knowledge. In all other respects, the parties'

motions to exclude expert testimony (Dkt. Nos. 62, 63, 65, 66, 67) are **DENIED.**

So ordered on November 9, 2026.

CHRISTOPHER R. WOLFE
UNITED STATES DISTRICT JUDGE